OPINIONS OF THE SUPREME COURT OF OHIO
        The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
        Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
        NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


The State ex rel. Nelson, Appellee, v. Fuerst, Clerk, et al.,
Appellants.
        [Cite as State ex rel. Nelson v. Fuerst (1993),        Ohio
        St.3d       .]
Public records -- R.C. 149.43 does not require custodians to
        mail either copies of public records or the records
        themselves.
        (No. 91-2099 -- Submitted January 5, 1993 -- Decided March
10, 1993.)
        Appeal from the Court of Appeals for Cuyahoga County, No.
62021.
        Carl A. Nelson, Sr., relator-appellee, is incarcerated at
Marion Correctional Institute ("MCI"), is indigent, and has
exhausted all direct appeals of his convictions.  Nelson sought
a writ of mandamus in the Court of Appeals for Cuyahoga County
to compel Cuyahoga County Clerk of Courts Gerald E. Fuerst and
Cuyahoga County Prosecuting Attorney Stephanie Tubbs Jones,
respondents-appellants, to make available for his inspection
seventy-one pages of documents pertaining to his convictions,
apparently for rape and kidnapping.  Nelson filed for the writ
because respondents' $1.00 per page copying fee was less
affordable than the $.12 per page fee charged at MCI.
        The court of appeals granted the writ, holding that R.C.
149.43(B) "entitles all persons, at a minimum, to inspect
public records."  To enforce this duty, the court ordered:
        "(1)  Respondent Clerk of Court * * * to notify [Nelson]
of the cost of postage to mail the records to the Marion
Correctional facility;
        "(2)  Upon receipt of the postage, respondent Clerk of
Court is to mail the records to the Superintendent of the
Marion facility;
        "(3)  Within two weeks of receipt of the records, the
superintendent is to collect the amount of return postage from
[Nelson] and make the records available for [Nelson's]
inspection and copying at the institution's copying fee, all
under supervision; and
        "(4)  The Superintendent is to mail the records back to
the Clerk of Court."

The cause is before this court on an appeal as of right.

Carl A. Nelson, Sr., pro se.

Stephanie Tubbs Jones, Prosecuting Attorney, Patrick J. Murphy and Carol Shockley, Assistant Prosecuting Attorneys, for appellants.

Robert E. Sexton and Thomas P. Sexton, urging denial of the writ, for amicus curiae Ohio Clerk of Courts Association.

Per Curiam. The issue presented for our review is: Did the court of appeals err in finding that respondents had a duty to mail public records on request? For the reasons that follow, we hold that R.C. 149.43 does not require custodians to mail either copies of public records or the records themselves. Accordingly, we reverse.

Respondents do not dispute that the records Nelson seeks are subject to public disclosure under R.C. 149.43(B). They object only to the court's procedure for enforcing this statute. Respondents contend that this procedure is contrary to R.C. 149.351(A), which prohibits the removal or transfer of public records from a public office, "except as provided by law," and R.C. 2303.09 and 2303.03, which require the clerk of the common pleas and appellate courts to preserve the papers filed in his office.

Neither R.C. 149.351(A) nor 2303.09, however, prevents the removal or transfer of records, with appropriate safeguards, where required by law. For example, the clerk of a trial court must transmit the record in a case on appeal pursuant to App.R. 10. Similarly, if R.C. 149.43(B) guarantees inmates access to public records, the custodians of those records must make the records available for inspection.

The duty to allow inspection and copying of public records imposed by R.C. 149.43(B), however, is not absolute. This statute provides:

"All public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain public records in such a manner that they can be made available for inspection in accordance with this division." (Emphasis added.)

Recently, we held that custodians of public records are not obligated by R.C. 149.43(B) to make copies of such records available by mail. In State ex rel. Fenley v. Ohio Historical Soc. (1992), 64 Ohio St.3d 509, 511, 597 N.E.2d 120, 122, we explained:

"We find the language of R.C. 149.43 clear and unambiguous. A custodian of public records who makes those records available for inspection, and who makes copies available upon request at the governmental unit's place of business, fulfills the responsibilities placed upon him by R.C. 149.43. We thus find the word 'available' is not synonymous with 'available by mail.'"

Thus, to comply with R.C. 149.43(B), respondents need only supply copies of requested public records at a reasonable cost

within a reasonable period of time during regular business hours. As the duty to allow inspection does not include mailing copies of public records, custodians of public records must also have no duty to mail the records themselves for inspection. Accordingly, the court of appeals erred in ordering respondents to transfer the records requested by Nelson by mail for his perusal.1

Therefore, the court of appeals' decision ordering respondents to mail the pertinent public records to Nelson for supervised copying is reversed.

Judgment reversed.

Moyer, C.J., A.W. Sweeney and F.E. Sweeney, JJ., concur.

Resnick, J., concurs in judgment only.

Douglas, Wright and Pfeifer, JJ., dissent.

FOOTNOTE
1    Although Nelson does not argue that he is entitled to copies of the instant records free of charge, due process apparently does not guarantee this here, where the indigent complainant has exhausted the direct appeal of his conviction and has no post-conviction remedy pending. State ex rel. Vitoratos v. Yacobucci (1962), 173 Ohio St. 462, 464, 20 O.O. 2d 81, 82, 184 N.E.2d 98, 99, certiorari denied and appeal dismissed (1962), 371 U.S. 25, 83 S.Ct. 135, 9 L.Ed.2d 96; State ex rel. Partee v. McMahon (1963), 175 Ohio St. 243, 248, 24 O.O.2d 386, 388-389, 193 N.E.2d 266, 269; State ex rel. Murr v. Thierry (1987), 34 Ohio St.3d 45, 517 N.E.2d 226.

Douglas, J., dissenting.    I respectfully dissent based upon my dissent in State ex rel. Fenley v. Ohio Historical Soc. (1992), 64 Ohio St.3d 509, 512, 597 N.E.2d 120, 123. This case graphically illustrates the unfairness of the Fenley decision. The majority, herein, says that appellee may have the records. Now all he has to do is figure a way to get out of prison so he can go to the public office involved (during regular business hours, of course) and pick up those records.

Wright, J., dissenting.    As I wrote in my dissent in State ex rel. Fenley v. Ohio Historical Soc. (1992), 64 Ohio St. 3d 509, 515, 597 N.E.2d 120, 125, I share Justice Douglas's approach to R.C. 149.43(B). I continue to believe that this statute "'requires custodians of public records to accept and honor, upon payment of a reasonable fee, requests for public records to be mailed to a requesting person.'" Id. at 514-515, 597 N.E.2d at 125 (Douglas, J., dissenting). If the present case were indistinguishable from Fenley, however, the doctrine of stare decisis might well require me to concur in today's judgment. But this case is distinguishable from Fenley, and even more clearly than Fenley illustrates the error of the majority's position. Therefore, I respectfully dissent.

The Cuyahoga County Clerk of Courts has asked this court to vacate a writ of mandamus issued by the court of appeals. In the court of appeals, Carl A. Nelson, Sr. sought and obtained a writ of mandamus to compel the clerk to provide copies of certain records pursuant to R.C. 149.43. There is no dispute that the records he seeks are public records or that the clerk's office is a public office under R.C. 149.43(A).

The clerk was willing to provide copies of the records, but only after Nelson paid a $1.00 per page fee for copying. Nelson was willing to pay postage for the records to be mailed to the prison where he could inspect them and copy only those portions he desired at the rate of $.12 per page. He was also willing to pay the return postage. Nelson explained to the court of appeals that at his current prison wage he could not afford the copying fee charged by the clerk of courts.

The court of appeals recognized that R.C. 149.43(C) "entitle[d] all persons, at a minimum, to inspect public records." (Emphasis sic.) Writing for a unanimous panel, Judge Patton issued the following order:

"(1) Respondent Clerk of Court is to notify relator of the cost of postage to mail the records to the Marion Correctional facility;

"(2) Upon receipt of the postage, respondent Clerk of Court is to mail the records to the Superintendent of the Marion facility;

"(3) Within two weeks of receipt of the records, the superintendent is to collect the amount of return postage from relator and make the records available for relator's inspection and copying at the institution's copying fee, all under supervision; and

"(4) The Superintendent is to mail the records back to the Clerk of Court."

The court of appeals' order is true to the scope and purpose of R.C. 149.43. Ohio's public-records law is necessarily broad. "'The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people; therefore anyone may inspect such records at any time, subject only to the limitation that such inspection does not endanger the safety of the record, or unreasonably interfere with the discharge of the duties of the officer having custody of the same.'" Dayton Newspapers, Inc. v. Dayton (1976), 45 Ohio St.2d 107, 109, 74 O.O.2d 209, 211, 341 N.E.2d 576, 577-578. "*** [T]he law's public purpose requires a broad construction of the provisions defining public records. Because the law is intended to benefit the public through access to records, this court has resolved doubts in favor of disclosure." State ex rel. Cincinnati Post v. Schweikert (1988), 38 Ohio St.3d 170, 173, 527 N.E.2d 1230, 1232. Thus, in a 1976 opinion for the court, Chief Justice O'Neill wrote:

"The relator seeks records which the General Assembly has declared to be public records. The statute makes them available to any member of the public, including the relator, at any reasonable time. No pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of public records within a reasonable time. The respondent is under a statutory duty to organize his office and employ his staff in such a way that his office will be able to make these records available for inspection and to provide copies when requested within a reasonable time." (Emphasis added.) State ex rel. Beacon Journal Publishing Co. v. Andrews (1976), 48 Ohio St.2d 283, 289, 2 O.O.3d 434, 437, 358 N.E.2d 565, 569. This court's

interpretation of the public-records statute has never before been dependent on the ability of the records seeker to travel to the office in which the records are kept.

R.C. 149.43(B) provides:

"All public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain public records in such a manner that they can be made available for inspection in accordance with this division." (Emphasis added.)

In Fenley, supra, this court held that a custodian of public records "has no clear duty under R.C. 149.43(B) to transmit copies of those records by mail ***." Id. at 510, 597 N.E.2d at 121. Fenley involved a genealogist, Ann Fenley, who requested that the Ohio Historical Society ("Society") photocopy and send to her a copy of a certain death certificate. Fenley argued that the Society was obligated to provide these services at cost, plus postage, and brought a mandamus action when the Society refused to do so. It was undisputed that the Society was a custodian of public records and stipulated that the document sought was a public record under R.C. 149.43.

A majority accepted the Society's argument that all R.C. 149.43 requires of custodians "is to allow inspection and copying at their place of business during business hours." Id. at 511, 597 N.E.2d at 122. "A custodian of public records," the court went on to say, "who makes those records available for inspection, and who makes copies available upon request at the governmental unit's place of business, fulfills the responsibilities placed upon him or her by R.C. 149.43." Id.

Although I disagree with this conclusion, the facts of Fenley do not show that Fenley was unable to travel to the Historical Society, search the records, and copy the death certificate she was seeking. Thus, the records were, in a literal sense, "available" for Fenley's inspection. This crucial fact distinguishes the Fenley case from today's case.

Nelson is locked in prison. He is unable to leave his cell, get in a car, drive to Cleveland, and copy the records he seeks. He clearly cannot afford the $1.00 per page copying fee the clerk of courts has demanded -- a fee which people who can travel to the clerk's office are not forced to pay in advance. In a very real sense the public records Nelson seeks, which he has an undisputed right to examine, are unavailable for his inspection. As a matter of undeniable common sense the records cannot be made "available upon request at the governmental unit's place of business." See Fenley, supra, at 511, 597 N.E.2d at 122.

The final sentence of R.C. 149.43(B) states: "In order to facilitate broader access to public records, governmental units shall maintain public records in such a manner that they can be made available for inspection in accordance with this division." (Emphasis added.) I believe that the right of the public to obtain records is important enough that a records custodian must accommodate those unable to travel to the

records office so that the records "can be made available for inspection." (Emphasis added.) To achieve the results required by R.C. 149.43 will sometimes demand flexibility from records custodians. If a custodian is unwilling to seek creative solutions, then a court must. In this case the court of appeals crafted an acceptable solution to a difficult problem. It properly balanced the need to keep the records safe and the clerk of courts' financial concerns with Nelson's right to examine the records. I would not disturb its judgment.

By reversing the court below, however, the majority seems to hold that people who are physically unable to travel to the public-records custodian are not entitled to obtain public records to the same extent as people who are able to do so in person. This decision has a most devastating impact on the right of prisoners, hospitalized people, and the disabled to examine public records. I feel that the court has foreclosed to these groups rights under the public-records statute expressly granted to all Ohioans by the General Assembly. As to the hospitalized and the disabled, I am especially concerned that this decision may violate the Americans With Disabilities Act of 1990, Section 12101 et seq., Title 42, U.S. Code.2 See Fenley, supra, at 516, 597 N.E.2d at 126 (Wright, J., dissenting). I am also concerned that it implicates the equal protection rights of prisoners.

With the exception of Fenley, our recent decisions have interpreted R.C. 149.43 broadly in accordance with the intent of the General Assembly. See, e.g., State ex rel. Toledo Blade Co. v. Univ. of Toledo Found. (1992), 65 Ohio St.3d 258, 602 N.E.2d 1159. The majority's refusal to permit people who cannot travel to the records custodian to enjoy their rights under R.C. 149.43 requires a most narrow reading of the statute. I would hold that in a case in which one seeking to examine a public record is physically unable to obtain the record in person, a public-records custodian is obligated by R.C. 149.43(B) to make the requested record available to that person for inspection without prepayment of a copying fee. I would not set forth firm guidelines as to how this must be done; each case is unique and must be dealt with in its own manner.

The reasonable and well-conceived order of the court of appeals should be affirmed.

Pfeifer, J., concurs in the foregoing dissenting opinion.

FOOTNOTE:
2 Because the implications of the Americans With Disabilities Act was not raised by the parties, it is not appropriate to speculate further on its applicability at this time.