OPINION
{¶ 1} Appellant, Jonathan Call, appeals the judgment of the Marion County Court of Common Pleas finding him guilty of two counts of aggravated arson, in violation of R.C. 2909.02(A)(1) and (2), and sentencing him to seven years in prison.
 {¶ 2} On June 7, 2002, a fire broke out at the home of Tim Edler and Lori Hummel in Marion, Ohio. Many of Edler and Hummel's neighbors called the police to report the fire. Upon investigation, it was apparent that the fire started as the result of arson. The police later determined that the fire began as a result of gasoline being poured on the front porch and then ignited, likely using firecrackers as the ignition source.
 {¶ 3} Call had been living next door to the Edler/Hummel residence for the past few months and quickly became a suspect to the alleged arson. While neighbors, Call had a number of disputes with members of the Edler/Hummel household. These arguments resulted in the Edler/Hummel household calling the police on June 3 and 4, 2002, just days before the fire. The Edler/Hummel household reported threats and abuse directed at them by Call which included threats to kill them and to burn their house down while they were inside. These threats were substantiated by other neighbors and some of the threats were captured on videotape.
 {¶ 4} Police also considered Call as a suspect based on various witnesses' accounts of the events which allegedly took place on the night of the fire. For example, Randy Runyon, who lived within two blocks of the Edler/Hummel residence, reported that he and his wife had seen a white male in a newer model four-door white car walk toward the Edler/Hummel residence carrying an unidentified object. Runyon described the man as wearing denim shorts and a tee shirt. Runyon further described the car as having out-of-state license plates with the first letter "G." Runyon stated that he and his wife then heard a loud popping sound and witnessed the same man running back to his car empty-handed. The suspect then drove away.
 {¶ 5} Approximately thirty minutes after the police were called to the Edler/Hummel residence on the night of the fire, police located Call's car parked in his driveway. The automobile was a 2000 white, four-door Ford Taurus with Texas license plate No. G67XJT. Officers obtained a search warrant and searched Call's residence.
 {¶ 6} During the search, officers recovered several gasoline cans and the denim shorts and tee shirt that Call was wearing. Later testing on the evidence revealed the presence of gasoline on Call's denim shorts and in the trunk of his car. Following the search, Call was arrested and charged with two counts of aggravated arson, in violation of R.C. 2909.02(A)(1) and (2). After Call's arrest, it was discovered that he had purchased fifty cents of gasoline at a nearby gas station approximately thirty minutes prior to the time of the fire at the Edler/Hummel residence.
 {¶ 7} Call was subsequently indicted on one count of intimidation in violation of R.C. 2921.04(B) and one count of retaliation in violation of R.C. 2921.05(B). Both cases proceeded to trial on November 12, 2002. The jury trial resulted in a not guilty verdict on the charges of intimidation and retaliation and a hung jury on the aggravated arson charge.
 {¶ 8} A second trial on the aggravated arson charge was held on February 3, 2003. Following a week-long trial, Call was found guilty and was subsequently sentenced to seven years incarceration.
 {¶ 9} It is from this conviction that Call appeals, setting forth three assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I Was it improper for the prosecutor to provoke the jury withreferences to the space shuttle disaster that happened just daysbefore trial?
 Given the cumulative prosecutorial misconduct in this case,can Mr. Call's trial be considered fair?
 {¶ 10} Call argues that the prosecution deprived him of a fair trial by the culmination of statements made throughout the proceedings. Specifically, Call objects to the prosecutor's statement during opening arguments that he was arrested and held in jail for a few days, as well as statements made during closing arguments wherein the prosecutor referred to the Columbia space shuttle, which had exploded during re-entry a few days before trial and directed comments to an individual juror. Call claims that these statements impermissibly prejudiced his defense.
 {¶ 11} During opening statements, the prosecutor related the background of the dispute between Call and the Edler/Hummel household. Included in this discussion was the mention of June 3 and 4, 2002, wherein the police were called to the Edler/Hummel residence responding to allegations that Call was acting in a threatening manner. The prosecutor then told the jury that Call was arrested on the night of June 4, 2002 and "for a couple of days, a few days they didn't see much of the Defendant. In fact, the Defendant, after he got out of jail, proceeded not to stay next door."
 {¶ 12} Defense counsel objected to this statement, claiming it was prejudicial to Call for the jury to know that he was in jail at a time prior to his arrest on the arson charges. Defense counsel then moved for a mistrial. Following a bench conference, the trial court overruled defense counsel's motion, ruling that the fact Call had been in jail would be brought out by the evidence.
 {¶ 13} The applicable standard of review for prosecutorial misconduct is whether the comments by the prosecution were improper, and, if so, whether they prejudiced Call's substantial rights. State v. Brady, Marion App. No. 9-03-27,2003-Ohio-6005, ¶ 6 (citations omitted). However, prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived Call of a fair trial based on the entire record. Id.
 {¶ 14} After reviewing the record, we do not find the prosecutor's comments to be improper. Call's arrest on June 4, 2002 and the subsequent days spent in jail were necessary to the prosecution's presentation of the case, as they were part of evidence of the dispute between Call and the Edler/Hummel household. The prosecution's theory of the case was that Call set the fire in retaliation of his arrest on the night of June 4, 2002. Moreover, we find that the evidence adduced at trial didshow that Call had been in jail for a few days prior to June 7, 2002, the night of the fire. Therefore, we do not find that the prosecutor's statement prejudiced Call's rights or deprived him of a fair trial.
 {¶ 15} The appellant also objects to statements made by the prosecutor during closing arguments. Appellant argues that the prosecutor's reference to the space shuttle Columbia and his comments directed at an individual juror were improper. We note that, with respect to the prosecution's allegedly improper remarks, the State has "wide latitude" in its closing argument.State v. Maurer (1984), 15 Ohio St.3d 239. The State is largely free to comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott
(1990), 51 Ohio St.3d 160, 165.
 {¶ 16} As a preliminary matter, we note that the defense failed to make objections to the contested statements regarding the Columbia space shuttle and the directed statement to an individual juror. Accordingly, these allegations were not properly preserved for appeal and are waived. See State v.DeNicola (1955), 163 Ohio St. 140, paragraph three of the syllabus; State v. Wogenstahl (1996), 75 Ohio St.3d 344. Thus, we review for plain error only. Crim.R. 52(B).
 {¶ 17} We recognize plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107. Under the general plain error standard, an appellant must demonstrate that the outcome of his trial would clearly have been different but for the errors that he alleges. State v. Waddell
(1996), 75 Ohio St.3d 163. Thus, prosecutorial misconduct constitutes plain error only if it is clear that the defendant would not have been convicted in the absence of the improper comments. State v. Slagle (1992), 65 Ohio St.3d 597, 606;State v. Johnson (1989), 46 Ohio St.3d 96, 102.
 {¶ 18} During closing arguments in the case sub judice, the prosecutor made reference to the witnesses who came forward to assist the police in their investigation and the police officers who worked to gather evidence and called these individuals heroes. The prosecution further stated:
You see, being a hero isn't perfect. If everyone were perfect,the space shuttle Columbia probably would have come to earthsafely. What it is, is standing up and doing the right thing. Andit's a shame when people come forward and do the right thing andthey're raked over the coals. Their integrity's impugned becausethey left a detail out of written statement. That the police'sintegrity is impugned because evidence incriminates the Defendantand they're accused of manufacturing or altering that evidence.[sic]
 {¶ 19} Courts have held that so long as a prosecutor's remarks do not contain an emotional appeal to the jurors' self-interest designed to arouse their prejudice against the defendant, the accused is not denied a fair trial. United Statesv. Solivan (C.A. 6, 1991), 937 F.2d 1146, citing United Statesv. Shirley (C.A. 6, 1970), 435 F.2d 1076.
 {¶ 20} We do not find that the prosecutor's comment regarding the Columbia space shuttle rose to the level of an emotional appeal to the jurors' self-interest. The comments did not suggest that the jurors had "personal stakes" in the outcome of the case nor does it appear to have been designed to arouse the jury's prejudice against the defendant. Furthermore, we find it difficult to determine how the comment could prejudice the jury against the defendant.
 {¶ 21} During closing arguments, the prosecutor also stated to one of the jurors, Franklin Snyder, "I think on voir dire, I think you indicated you were investigating students that normally there's something that leads to something else that causes what happens," to which the juror nodded affirmatively.
 {¶ 22} Regarding the prosecution's address of an individual juror during closing arguments, we recognize that a prosecutor's argument that goes outside the record and adversely influences the jury toward the defendant can result in the denial of a fair trial, State v. Watson (1969), 20 Ohio App.2d 115. Where reference to matters outside the record is short, oblique and justified as a reply to a defense argument, however, it does not prejudice the defendant and is not error.
 {¶ 23} The comment made to the juror in this case was short; it was made by way of an analogy, and urged the juror to draw on his own experience in considering the case and the charges against Call. Accordingly, we do not find that it adversely influenced the jury or resulted in the denial of a fair trial.
 {¶ 24} In sum, we find that the prosecutor's comments in reference to the Columbia space shuttle and to an individual juror do not rise to the level of plain error. We cannot hold that Call has demonstrated that the outcome of his trial would clearly have been different but for these alleged errors.
 {¶ 25} Therefore, Call's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO.II Can an assistant prosecutor, who was once assigned to thiscase, testify as a witness in the matter with no justification bythe State?
 {¶ 26} Assistant County Prosecutor Rhonda Burggraf filed the indictment and some pre-trial documents in Call's first case. Burggraf was subsequently called as a witness in the second trial. She testified that she had met with Randy Runyon, a neighbor of the Edler/Hummel household and a witness, and that during that meeting he related to her that the license plate on the vehicle he saw leave the neighborhood at the time of the fire had the first letter "G." Defense counsel had intimated that Runyon's first statement to the police did not contain this detail and the state offered Burggraf's testimony as a prior consistent statement to rebut a claim of recent fabrication, pursuant to Evid.R. 801.
 {¶ 27} Call argues that Burggraf's testimony was improper and a potential violation of DR 5-102, which prohibits an attorney from representing a client when a member of the firm may be called as a witness. Call claims that this error requires reversal under the Fifth and Fourteenth Amendments of the United States Constitution. At trial, however, defense counsel failed to object to Burggraf's testimony. Therefore, we analyze this assignment of error on a plain error basis.
 {¶ 28} We recognize that a prosecuting attorney should avoid being a witness in a criminal prosecution, but when it is a complex proceeding where substitution of counsel is impractical, and where the attorney so testifying is not engaged in the active trial of the cause and it is the only testimony available, such testimony is admissible and not a violation of DR 5-102. Statev. Coleman (1989), 45 Ohio St.3d 298, 302.
 {¶ 29} A review of the record indicates that Burggraf's involvement in the Call's first trial did not exceed the filing of pre-trial motions and she took no active part in the preparation of the re-trial. Furthermore, Burggraf's testimony was the only testimony available to rebut the charge of recent fabrication. She had met individually with Runyon and had taken personal notes during the meeting. Substitution of counsel, in this instance, would have been impractical, as the entire Marion County Prosecutor's Office would have to be disqualified from prosecuting the case. We do not find that Assistant Prosecutor Burggraf's testimony amounted to ethical or legal error.
 {¶ 30} Therefore, Call's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III Did the trial court err in convicting Mr. Call based oninconsistent testimony?
 {¶ 31} Call's final contention is that his conviction was based on inconsistent testimony and is against the manifest weight of the evidence. Call argues that there was insufficient evidence to convict him for aggravated arson and even in light of the evidence presented, the jury lost its way in evaluating the credibility of the witnesses.
 {¶ 32} When reviewing whether the verdict was against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In making this determination, there are eight factors to consider. These factors are whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, the certainty of the evidence, the reliability of the evidence, whether the testimony of a witness is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary. In reviewing these factors, the reviewing court is not required to accept the incredible as true. State v.Apanovitch (1987), 33 Ohio St.3d 19, 23-24 (citations omitted).
 {¶ 33} We note that Call fails to point out any instances of inconsistent testimony in the record. The argument makes absolutely no mention of what witnesses contradicted others and likewise fails to identify any inconsistencies in individual witnesses' testimony.
 {¶ 34} Our review of the record does not indicate that Call's conviction was against the manifest weight of the evidence. There was ample evidence presented at trial to support the conviction. For example, Call matched the description of the man Randy Runyon saw approach the Edler/Hummel residence just before the fire began; Call's car and license plate also matched the description given by Runyon; Call's clothes tested positive for gasoline; Call was captured on videotape buying fifty cents of gasoline approximately thirty minutes before the fire began; and Call had made threats to the Edler/Hummel household telling them he would burn down their house while they slept.
 {¶ 35} Based on the abundance of evidence presented at trial, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice such that the conviction must be reversed.
 {¶ 36} Call's third assignment of error is overruled.
 {¶ 37} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Bryant and Shaw, JJ., concur.