**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McDougald v. Sehlmeyer*, Slip Opinion No. 2020-Ohio-4637.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4637

THE STATE EX REL. MCDOUGALD *v.* SEHLMEYER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McDougald v. Sehlmeyer*, Slip Opinion No. 2020-Ohio-4637.]**

*Mandamus—Public Records Act—Relator must establish by clear and convincing evidence entitlement to a writ of mandamus—Writ denied.*

(No. 2020-0189—Submitted July 21, 2020—Decided October 1, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Jerone McDougald, seeks a writ of mandamus to compel respondent, Sonrisa Sehlmeyer, to permit him to inspect public records. For the reasons set forth herein, we deny McDougald's request for a writ of mandamus, statutory damages, and court costs.

## I. Background

{¶ 2} On September 3, 2019, McDougald, an inmate at the Toledo Correctional Institution ("TCI"), sent a public-records request via prison kite to Sehlmeyer, the warden's administrative assistant and the official responsible for public-records requests at TCI. McDougald asked to *inspect* two use-of-force reports and a deputy warden's review of a particular use-of-force incident. On September 10, McDougald sent a second kite to Sehlmeyer, quoting the first request in full and indicating that he had not received a reply to the September 3 request. Sehlmeyer wrote on the second kite, "This is in process. The records are being reviewed." The kite was then returned to McDougald.

{¶ 3} On September 23, Sehlmeyer informed McDougald by letter that his public-records requests had been received and "turned over to Legal Services for further review." McDougald alleges that, as of January 23, 2020, he had not received a final answer to his public-records request.

{¶ 4} According to Sehlmeyer's affidavit that has been submitted as evidence in this case, McDougald was "informed by [the Ohio Department of Rehabilitation and Correction] that he would not be permitted to inspect the requested records due to his lengthy history of destructive violence and high security risk," and that "paper copies [of the records] could be provided at cost." Sehlmeyer points to a letter she wrote to McDougald, in which she stated, "We cannot allow secure inspection of records, as you requested. Paper copies of the records can be provided to you at the cost of 5 cents per page." However, this letter is undated and her affidavit does not indicate when it was sent.

{¶ 5} On February 3, 2020, McDougald filed the present complaint for a writ of mandamus. On February 19, he filed a motion for leave to amend his complaint "to add that [he] hand delivered his kite requesting public records from Ms. Sehlmeyer on Sept. 3, 2019."

{¶ 6} On February 28, 2020, Sehlmeyer filed an answer, which asserted:

2

> After a thorough investigation, it was the determination of Legal Services that Respondent did not have a legal duty to permit Relator to inspect the requested records due to concerns over safety and security, interference with the discharge of duties, and the safety of the records. Relator has since been notified that he is not permitted to inspect records.

Sehlmeyer's answer did not indicate when this notification was given to McDougald.

{¶ 7} On April 22, 2020, we granted McDougald's motion for leave to amend his complaint, issued an alternative writ, and ordered the parties to submit evidence and file briefs in accordance with S.Ct.Prac.R. 12.05. 158 Ohio St.3d 1481, 2020-Ohio-1487, 143 N.E.3d 518. The parties have submitted evidence and filed merit briefs, but McDougald did not file a reply brief.

## II. Legal analysis

### A. McDougald's public-records claim

{¶ 8} Ohio's Public Records Act, R.C. 149.43, requires a public office, upon request, to make public records available for inspection or to provide copies of the records within a reasonable period of time. R.C. 149.43(B)(1). A "public record" is a record "kept by any public office." R.C. 149.43(A)(1). Mandamus is an appropriate remedy by which to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6.

{¶ 9} To be entitled to the writ, McDougald must demonstrate that he has a clear legal right to the requested relief and that Sehlmeyer has a clear legal duty to provide that relief. *See State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d

392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. McDougald must prove his right to relief by clear and convincing evidence. *Id.* Ohio's Public Records Act "is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

{¶ 10} However, the duty imposed by R.C. 149.43(B)(1) to allow a person to inspect a public record "is not absolute." *State ex rel. Nelson v. Fuerst*, 66 Ohio St.3d 47, 48, 607 N.E.2d 836 (1993). Permitting an inmate to inspect records personally is not required when doing so would create security issues, unreasonably interfere with officials' discharge of their duties, and violate prison rules. *State ex rel. Dehler v. Mohr*, 129 Ohio St.3d 37, 2011-Ohio-959, 950 N.E.2d 156, ¶ 2.

{¶ 11} As attested to by Sehlmeyer in her affidavit that was submitted as evidence in this case, in 2019, McDougald was the subject of at least ten prison-conduct reports for rule infractions, "including, but not limited to, threatening bodily harm to another; throwing, expelling, or otherwise causing a bodily substance to come into contact with another; and disrespect to an officer, staff member, visitor or other inmate." According to the reports that Sehlmeyer submitted as evidence, McDougald has hurled spittle, feces, and "an unknown liquid" at other inmates and correctional officers. Based on McDougald's history and his "high security classification," Sehlmeyer attests that "extensive measures would need to be taken to permit him to inspect records." She also "believe[s] that he poses a serious risk of destroying those records."

{¶ 12} The evidence in the record shows that permitting McDougald to inspect records would create serious security concerns. To ensure the safety of all concerned, the prison would have to assign multiple correctional officers to escort and supervise McDougald, which would interfere with the discharge of their normal duties. McDougald offers no response to these concerns, nor does he refute the evidence that he presents a security risk.

4

{¶ 13} McDougald's only argument in his merit brief is that Sehlmeyer may not condition his right to inspect the records on the prepayment of any fee. " 'The right of inspection, as opposed to the right to request copies, is not conditioned on the payment of any fee under R.C. 149.43.' " *State ex rel. Penland v. Ohio Dept. of Rehab. & Corr.*, 158 Ohio St.3d 15, 2019-Ohio-4130, 139 N.E.3d 862, ¶ 12, quoting *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 624, 640 N.E.2d 174 (1994). But Sehlmeyer has not conditioned McDougald's right to inspect the records on the payment of a fee. After denying his request to inspect, she conditioned his receipt of paper copies on the payment of a reasonable copying cost, which she was permitted to do. R.C. 149.43 does not require a records custodian to provide copies of records free of charge. *State ex rel. Call v. Fragale*, 104 Ohio St.3d 276, 2004-Ohio-6589, 819 N.E.2d 294, ¶ 6. Instead, the statute "requires only that copies of public records be made available at cost." *Id.*, citing R.C. 149.43(B)(1).

{¶ 14} McDougald has not established by clear and convincing evidence his entitlement to a writ of mandamus. We therefore deny the writ.

### B. Statutory damages

{¶ 15} McDougald devotes much of his merit brief to his claim that Sehlmeyer breached an obligation under R.C. 149.43 and is therefore obligated to pay him statutory damages. An award of statutory damages is not dependent on the issuance of a writ of mandamus: the breach of *any* obligation imposed by R.C. 149.43(B) on a public-records custodian triggers a possible statutory-damages award. *See, e.g., State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 22 (holding that statutory damages were warranted even though the mandamus action was moot, because the university took an unreasonable length of time to produce the records).

{¶ 16} We hold that McDougald is not entitled to statutory damages. Statutory damages are available only if McDougald proves that a request was

delivered "by hand delivery, electronic submission, or certified mail." R.C. 149.43(C)(2). McDougald's exhibits demonstrate that he sent his public-records requests as prison kites, and Sehlmeyer's affidavit confirms that she received those requests through the prison's kite system. However, as we explained in *State ex rel. McDougald v. Greene*, __ Ohio St.3d __, 2020-Ohio-3686, __ N.E.3d __, ¶ 18, this method of delivery does not qualify McDougald for statutory damages.

{¶ 17} The fact that McDougald amended his complaint to *allege* that he hand-delivered one of his kites to Sehlmeyer does not change our analysis. McDougald has not submitted any clear and convincing evidence *proving* that he hand-delivered one of his kites to Sehlmeyer. To qualify for an award of statutory damages, a requester must prove the method of delivery by clear and convincing evidence. *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 9. And McDougald has not proffered any evidence to support his allegation.

{¶ 18} We deny McDougald's request for statutory damages.

*C. Court costs*

{¶ 19} Court costs are awarded in a public-records case in two circumstances. First, an award of court costs is mandatory when a court grants a writ of mandamus compelling a public office to comply with its duties under the Public Records Act. R.C. 149.43(C)(3)(a)(i). Second, court costs shall be awarded when a court determines that the public office acted in bad faith when it "made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not" to grant a writ of mandamus, R.C. 149.43(C)(3)(b)(iii). *See* R.C. 149.43(C)(3)(a)(ii). Neither scenario applies to the facts of this case. Therefore, McDougald is not entitled to an award of court costs.

### III. Conclusion

{¶ 20} For the reasons stated, we deny McDougald's request for a writ of mandamus, statutory damages, and court costs.

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

STEWART, J., concurs in judgment only as to the request for statutory damages and otherwise concurs in the majority opinion.

KENNEDY, J., concurs in part and dissents in part, with an opinion.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 21} I concur with the majority's decision that relator, Jerone McDougald, is not entitled to a writ of mandamus to compel respondent, Sonrisa Sehlmeyer, the official responsible for public-records requests at the Toledo Correctional Institution ("TCI"), to allow McDougald to personally inspect certain documents. However, because Sehlmeyer's response to McDougald's public-records request was unreasonably delayed—it took at least five months—I would award McDougald statutory damages pursuant to R.C. 149.43(C)(2). Unlike the majority, I would hold that a public-records request that has been delivered through a prison's kite system is equivalent to hand delivery, making McDougald eligible for statutory damages. Therefore, I concur in part and dissent in part.

*Mandamus*

{¶ 22} On September 3, 2019, McDougald, using the prison's kite system, made a public-records request to inspect three records: a deputy warden's review of a use-of-force incident involving McDougald that occurred on July 22, 2019, and two use-of-force reports filed by two correctional officers regarding another incident involving McDougald that occurred on June 10, 2019. There is no dispute that the records McDougald sought are indeed public records.

{¶ 23} I concur with the majority decision's holding that McDougald failed to prove that he is entitled to inspect the original records inside TCI. I agree with the majority that "[p]ermitting an inmate to inspect records personally is not required when doing so would create security issues, unreasonably interfere with officials' discharge of their duties, and violate prison rules." Majority opinion at ¶ 10, citing *State ex rel. Dehler v. Mohr*, 129 Ohio St.3d 37, 2011-Ohio-959, 950 N.E.2d 156, ¶ 2. Unlike an earlier case in which McDougald sought to inspect records at TCI, *State ex rel. McDougald v. Sehlmeyer*, __ Ohio St.3d __, 2020-Ohio-3927, __ N.E.3d __, in this case, Sehlmeyer has produced specific reasons why McDougald's request would unreasonably interfere with the discharge of the duties of prison officials. Based on the evidence presented by Sehlmeyer, I agree that McDougald presents a security risk and therefore Sehlmeyer properly denied his request to inspect the records. Therefore, McDougald has failed to prove his entitlement to a writ of mandamus. However, that is not the only issue in this case. The remaining issue is whether Sehlmeyer responded to McDougald's public-records request within a reasonable amount of time and if she did not, whether a failure to timely respond results in an award of statutory damages.

*Statutory Damages*

{¶ 24} R.C. 149.43(C)(2) provides for statutory damages of $100 for each business day, up to $1,000, if a court determines that the public office "failed to comply with an obligation in accordance with [R.C. 149.43(B)]." When a public office receives a public-records request, it is obligated to promptly provide any responsive records within a reasonable amount of time. R.C. 149.43(B)(1). And when it denies a public-records request, it must inform the requester of that denial and provide the reasons for the denial. R.C. 149.43(B)(1) and (3); *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11.

{¶ 25} Even if the public office has no responsive records to produce, its failure to respond in a timely manner with the reasons for its failure to produce the

requested records makes it liable for statutory damages. *Cordell* at ¶ 13. Whether the public office complied with its statutory duty to respond within a reasonable period of time " 'depends upon all of the pertinent facts and circumstances.' " *Id.* at ¶ 12, quoting *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 10. The person requesting the records "bears the burden of demonstrating that the [public office's] response to [the] public-records requests was unreasonably delayed." *Id.*, citing *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 44.

{¶ 26} McDougald made his public-records request on September 3, 2019. On September 23, 2019, Sehlmeyer sent McDougald a letter stating that his request to inspect the public records was "turned over to Legal Services for further review." McDougald's request was specific and not voluminous, yet he received no response until after he had filed his complaint for a writ mandamus in this court on February 3, 2020. Sehlmeyer does not dispute that contention and offers only an undated letter to McDougald explaining that TCI could not offer him secure inspection of the records. The only conclusion to be drawn from these facts is that McDougald first received the denial of his request after the petition for a writ of mandamus was filed—some five months after his first request to inspect the public records was sent. Without an explanation from Sehlmeyer as to the cause of the delay, I must conclude that Sehlmeyer failed to comply with R.C. 149.43(B). Because Sehlmeyer failed to meet the requirements of R.C. 149.43(B), McDougald is eligible for statutory damages. R.C. 149.43(C)(2).

{¶ 27} A requester of public records may receive statutory damages only if the request was made by hand delivery, electronic submission, or certified mail. R.C. 149.43(C)(2). The majority holds that McDougald is not eligible for statutory damages because he sent his public-records request through TCI's kite system, and that a request by kite does not constitute hand delivery. I disagree, and would hold that delivery by kite is the equivalent of hand delivery. *See State ex rel. McDougald*

*v. Greene*, __ Ohio St.3d __, 2020-Ohio-3686, __ N.E.3d __, ¶ 60 (Kennedy, J., dissenting). Therefore, McDougald's method of delivery did not preclude an award of statutory damages.

{¶ 28} A court may decline to award statutory damages or reduce the amount of the award if it finds that based on the public-records law that existed at the time of the alleged conduct that constituted the failure to comply with R.C. 149.43, "a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct * * * did not constitute a failure to comply * * * with [R.C. 149.43(B)]," R.C. 149.43(C)(2)(a), and also that "a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b). Neither of the reduction factors apply in this case. Ignoring McDougald's public-records request for at least five months is not defensible under Ohio's Public Records Act, R.C. 149.43.

{¶ 29} Statutory damages are awarded at a rate of $100 per day "for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with [R.C. 149.43(B)], beginning with the day on which the requester files a mandamus action to recover statutory damages." Since Sehlmeyer has produced only an undated letter to McDougald explaining that "[w]e cannot allow secure inspection of records," I can only conclude that it was at least 10 days after the filing of McDougald's complaint that Sehlmeyer provided an answer to McDougald's original public-records request. Therefore, I would award McDougald the statutory maximum of $1,000.

*Conclusion*

{¶ 30} Because I agree with the majority that McDougald is not entitled to a writ of mandamus compelling Sehlmeyer to allow him to personally inspect the

records he sought from TCI, I concur in part. But because I would hold that Sehlmeyer's unreasonable delay in responding to McDougald's request made McDougald eligible for an award of statutory damages and because his method of delivery did not preclude him from being awarded such damages, I accordingly dissent in part.

––––––––––––––––––

Jerone McDougald, pro se.

Dave Yost, Attorney General, and Jared S. Yee, Assistant Attorney General, for respondent.

––––––––––––––––––